Henry Baker v. City of Fairbury.

[Filed January 4, 1892.]

Occupation Tax: Voluntary Payment. One B. took out a
license to sell malt, spirituous, and vinous liquors from the city
of F., for which he paid the city $500, and $500 occupation tax.
This was continued for three years, the money being paid freely
and without question each year. Afterwards he sought to re-
cover back the money paid for occupation tax upon the ground
that the ordinance had not been lawfully passed. *Held*, That
the money had been paid voluntarily and the court would not
inquire into the validity of the ordinance.

Error to the district court for Jefferson county. Tried
below before Morris, J.

*John Saxon*, for plaintiff in error, cited, contending that
the tax was illegal and could be recovered back: *Torbitt v.
Louisville*, 4 S. W. Rep. [Ky.], 345; *Hatter v. Greenlee*,
26 Am. Dec. [Ala.], 374; *Cotter v. Doty*, 5 O., 397; *CIN.
v. Bryson*, 15 Id., 625; *Claflin v. McDonough*, 84 Am.
Dec. [Mo.], 54, and notes; *Ligonier v. Ackerman*, 15 Id.
[Ind.], 323; *Chandler v. Sanger*, 19 Id. [Mass.], 367–695;
*Hilborn v. Bucknam*, 57 Id. [Me.], 816; *State v. Gray*,
23 Neb., 369; 2 Dill., Corps., sec. 751; 4 Wait, A. &. D.,
476; *Cobb v. Carter*, 87 Am. Dec. [Conn.], 178.

*E. H. Hinshaw*, contra, cited: 4 Wait, A. & D., 480;
*Mutual Life Ins. Co. v. Wager*, 27 Barb. [N. Y.], 354;
*Peterborough v. Lancaster*, 14 N. H., 382; *West v. Hous-
ton*, 4 Harr. [Del.], 170; *Bucknall v. Story*, 13 Am. Dec.
[Cal.], 220; *Kraft v. Keokuk*, 14 Ia., 86; *Espy v. Fort
Madison*, Id., 226; *Lester v. Baltimore*, 29 Md., 415;
Cooley, Taxation [2d Ed.], 809; *Welton v. Merrick Co.*,
16 Neb., 83; *Foster v. Pierce Co.*, 15 Id., 48; *Bates v.
York Co.*, Id., 284; *Mays v. Cincinnati*, 1 O. St., 268;

Burroughs, Tax., 266; 2 Dill., Mun. Corp. [3d Ed.], 941; *Detroit v. Mastin*, 22 Am. Dec. [Mich.], 512–21.

MAXWELL, J.

A demurrer to the petition was sustained in the court below and the action dismissed.    The petition is as follows:

"Said defendant is a city of the second class, duly organized under the laws of Nebraska, being divided into two wards only, and whose council is composed of two councilmen, elected as such from each ward, and no more; and having less than 5,000 inhabitants, and was so at all of the times hereinafter mentioned.

"2d. That on or about the 1st day of May, 1887, the said plaintiff was about to engage in the business of vending malt, spirituous, and vinous liquors within said city, and thereupon made application to the mayor and council of said city for a license for such business, and gave his bond and in all respects complied with the laws of the state and the ordinances of said city in order to obtain the same, and also paid into the treasury of said city the sum of $500 therefor as he was required to do, and was thereupon granted such license by said mayor and council.

"3d. That at the time when said license was so granted to him, and after he had so paid said $500, but before said license was issued and delivered to him, the said mayor and council of said city then and there claimed and represented to plaintiff that there was then in force a certain other ordinance of said city, known as 'Ordinance No. 41,' which imposed and required plaintiff to pay for and take out a second and further license known and called an occupation license, the charge or fee for which was also fixed at the sum of $500, and then and there demanded and required of plaintiff the payment of said sum of $500 before said first mentioned license would be issued to him.    And he avers that said mayor thereupon refused to issue said first mentioned license or to refund the money so paid in therefor

unless said so-called occupation fee was also paid by him. And plaintiff says that in order to obtain said first mentioned license and to save himself from loss of said $500 so paid in, and to avoid an arrest of his person for attempting to carry on his said business without the same, he was compelled to pay and did pay said so-called occupation license fee of $500. Thereupon said mayor did issue said first mentioned license, but none other, and plaintiff was then permitted to carry on his said business in said city during said year ending May 1, 1888.

"4th. That afterwards, to-wit, on or about the first day of May, 1888, he again applied to said mayor and council of said city for license to sell such said liquors for and during the then ensuing municipal year, and filed his bond and paid into the treasury of said city the sum of $500 therefor; and such license was thereupon granted to him by said mayor and council.

"And plaintiff avers that said mayor and council thereupon again claimed and represented to him that said 'Ordinance No. 41' was still in force in said city, and that the plaintiff would be compelled to take out and pay for said occupation license as in the previous year, in order to obtain said first-mentioned license. And he further says that upon the demand and compulsions and reasons as aforesaid he did then and there pay into the treasury of defendant said occupation license fee or charge of $500, and that thereupon he received said first-mentioned license, but none other, and was again permitted to carry on his said business for and during the year ending May 1, 1889.

"5th. That afterwards, to-wit, on or about the 1st day of May, 1889, he again applied to said mayor and council of said city for a license to sell such said liquors for and during the then ensuing municipal year, and filed his bond and paid into the said city treasury the sum of $500 therefor, and such license was thereupon granted to him by said mayor and council. And plaintiff says that thereupon

said mayor and council thereupon again claimed and represented to him that said 'Ordinance No. 41,' of said city, was yet in full force and effect, and that he, plaintiff, would be compelled to take out and pay for said occupation license as in the two previous years, in order to obtain said first-mentioned liquor license. And he says that upon the demand and compulsions aforesaid he did then and there pay into the treasury of said city said occupation license fee or charge of $500, and that he thereupon received from said mayor said first-mentioned license, but none other, and was again permitted to carry on his said business in said city, and so remains to this day.

"6th. That although he was so compelled and required to pay to defendant said occupation license fee or charge of $500 for and during each of said years, yet said mayor has never executed nor delivered to him any such license, and he has never received such occupation license to this day for any of said years.

"7th. The plaintiff now states that on or about the 1st day of December, 1889, and long since said sums of money were so exacted from him by said defendant, he learned, and now charges the fact to be, that said pretenses and representations of defendant that there is or was in force in said city said pretended Ordinance No. 41, requiring the payment of such occupation license fee upon his said business, were false; that said so called Ordinance No. 41 was not at any of said times, nor during any of said years, nor any part thereof, so in force or existence in said city; that said Ordinance No. 41, although duly published by defendant, and recorded in defendant's ordinance book, was never, in fact, passed or enacted by the council of said city; that at the time when said proposed 'Ordinance No. 41' was being considered by and in said council, and not upon its passage, to-wit, April 25, 1887, said council was composed and consisted of only four members aforesaid, and that upon the 'yeas' and 'nays' being called upon the question

of its passage, only two of said councilmen voted 'yea' for its passage, and two of them voted 'nay' against its passage, and the adoption of said ordinance was not concurred in by a majority of the members elected to said council as required by defendant's charter in order to become an ordinance of said city, so that the same never became an ordinance, as said mayor and council well knew. But plaintiff says, and further charges the fact to be, that said mayor and said two councilmen who had so voted 'yea' for the passage of 'said 'Ordinance No. 41' then and there wrongfully and unlawfully conspiring together to secure the enactment and publication thereof, to the injury and damage of plaintiff and others engaged in the same business, did then and there aid, counsel, and procure said mayor wrongfully and unlawfully to vote upon the passage of said ordinance 'yea' with them, and thereupon to declare said ordinance duly carried and enacted, and to cause the same deceitfully to be published and recorded as a valid ordinance of said city, all of which was done, and said false and deceitful pretended ordinance was thereupon signed by said mayor, and falsely and deceitfully sealed with the seal of said city, and ordered published, and was so published on the 29th day of April, 1887.

"8th. And plaintiff further states that said false and deceitful pretended 'Ordinance No. 41' has ever since been kept and maintained of record by the mayor and council of said city, and wrongfully enforced by defendant as valid and binding, and defendant's marshal and policemen instructed and required to enforce the same, and to arrest any and all persons found violating its provisions or carrying on such business without having paid to defendant the license fee therein and thereby enacted, notwithstanding such person or persons may have paid for and taken out a regular license to sell such liquors as required by the laws of the state. And this plaintiff was so as aforesaid wrongfully and deceitfully compelled by said de-

fendant to pay into the treasury said sums of money at the time mentioned, to-wit: On or about May 1, 1887, the sum of $500; on or about May 1, 1888, the sum of $500; and on or about May 1, 1889, the sum of $500; in all, the sum of $1,500, and to his damage $1,500, with interest on each of said payments from the date thereof. ·

"The plaintiff therefore prays for a judgment against said city of Fairbury for the sum of $1,500, with interest on $500 thereof from May 1, 1887, at seven per cent; and interest on $500 thereof from May 1, 1888, at seven per cent; and interest on $500 thereof from May 1, 1889, at seven per cent, and his costs."

According to the plaintiff's own statement of the case, an ordinance was passed by the city of Fairbury, which required a saloon-keeper to take out license for the sale of intoxicating drinks for which he was required to pay $500, and also an occupation tax of $500 for the use of the city.

The ordinance under which the latter was collected, it is claimed, was not lawfully enacted, and the plaintiff's whole case hinges upon this proposition. It is unnecessary to enter upon an examination of the question.

The plaintiff, at the time he paid the money, made no objection thereto, but paid the same freely and voluntarily.

The mayor and council had authority to fix the amount of license at such sum in excess of $500 as they saw fit. They chose to fix it at $1,000, including the tax, and this sum, so far as appears, the plaintiff paid without question. He is not in a situation, therefore, to recover it back. The judgment is right, and is

AFFIRMED.

THE other judges concur.