H. M. Cornell and B. W. Rosenstone, Appellants, v. Board of Education for High School District No. 99, Appellee.

Gen. No. 9,062.

Opinion filed September 3, 1936.

WEIGHTSTILL WOODS, of Chicago, for appellants.

WILLIAM E. HOOPER and HERBERT A. GROTEFELD, both of Downers Grove, for appellee; GEORGE P. FOSTER, of Chicago, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

The trial court sustained a motion to strike the plaintiffs' complaint and accompanying bill of particulars and the plaintiffs elected to abide by their pleadings and their action was dismissed at their costs and this appeal follows.

The complaint alleged that the plaintiffs were the owners of all beneficial interest and avails of sundry lots in Lyman Park Subdivision in Downers Grove, Illinois; that in 1934 they first learned that none of this land lies within the territorial area of the defendant corporation and therefore the defendant never had any authority or power to levy, extend, collect or receive any taxes with reference to said real estate; that the defendant levied, assessed, extended, demanded and collected taxes from the plaintiffs wrongfully and without any color or warrant of authority for the years 1925 to 1930, amounting to the aggregate sum of $1,000, which amount the plaintiffs paid through the regular DuPage county officers and which amount the defendant now holds to the use and for the benefit of the plaintiffs. The bill of particulars filed with the complaint recites that the tax rate of the defendant district was $2.75 for each $100 valuation for 1925 and 1926, $2 for each $100 valuation for 1927, and for each of the other years; that the valuation for tax purposes of the properties of the plaintiffs and upon which they paid taxes as demanded was, for the year 1925 $2,095, for 1926 $2,315, for the year 1927 $17,430, for the year 1928 $12,350, and for each of the years 1929 and 1930 the valuation was $12,300. The bill of particulars further recited that the share of moneys demanded as taxes by the constituted public authority and paid by the plaintiffs and received and retained by the defendant, upon lands of the plaintiffs in said Lyman Park Subdivision, which were never within the geographical area of defendant district amounted to $1,000.

It is insisted by counsel for appellants that the lands of the plaintiffs being outside of the appellee district were not assessable for high school taxes, that they were wrongfully assessed and the taxes paid by mistake, and as the district has obtained appellants' money without any color of authority, appellants are entitled

to recover. In support of their contention they cite and rely particularly upon *United States v. Norton,* 97 U. S. 164, and *Pederson v. Stanley County,* 34 S. D. 560, 149 N. W. 422. In the *Norton* case it appeared that the treasury agent of the government, having possession of claimant's cotton, had exacted from the owner, on June 13, 1865, a payment equivalent to one-fourth of its value as provided by a statute of the United States. It appeared that the President, by proclamation, acting in pursuance of law, removed the restriction under which the treasury agent was acting. The court held that the proclamation of the President took effect at the beginning of that day, and that the payment, while voluntary, was made under a mutual mistake of law and could be recovered. The *Pederson* case, *supra,* was an action by Pederson to recover from Stanley county taxes paid by him upon lands, afterwards found to be in Lyman county. It appeared that the Pederson lands were situated on a strip of land at one time claimed to be in both Lyman and Stanley counties. The Supreme Court of South Dakota held that this strip of land was in and belonged to Lyman county, but prior to the time that decision was rendered, Pederson paid the taxes in both counties. In holding that Pederson was entitled to recover, the court said: "It is the contention of appellant (the county) that under the general rule that taxes voluntarily paid cannot be recovered, the respondent was not entitled to recover a judgment for the said amounts so paid to Stanley county. We are of the view that the said rule has no application to the facts of this case. The property of respondent was wholly outside of the taxing jurisdiction or taxing district of Stanley county, and was therefore not taxable at all in the county, and the amounts so paid by respondent to said Stanley county were in fact not a tax at all. Stanley county was wholly without jurisdiction

or authority to levy and collect such sums as a tax against the property of respondent."

In *Edwards v. Board of Com'rs of Oklahoma County,* 169 Okla. 87, 36 P. (2d) 6, it appeared that plaintiffs' property was wrongfully assessed for the taxable years 1929 and 1930 in a school district where it was not situate. The tax rate of this district was considerably higher than in the district where the land lay. The plaintiff did not know of the mistake and voluntarily paid the tax, but upon discovering the mistake he sued to recover the difference between the amount he paid and what he should have paid. The court in its opinion said that county officials were not infallible and that the plaintiff was negligent in not discovering the error and held there could be no recovery. In its opinion the court cited the cases of *Wilson v. Allen County,* 99 Kan. 586, 162 Pac. 1158 and *San Diego Land & Town Co. v. La Presa School District,* 122 Cal. 98, 54 Pac. 528. In the *Wilson* case it appeared that the plaintiff owned land lying in School District No. 9, but it was assessed as lying in School District No. 10, being the school district embracing the City of Iola and where the tax rate was much higher than the tax rate in School District No. 9. The plaintiff paid his taxes at the rate of district No. 10 and upon discovering the error, brought suit to recover the excess which he had paid. In denying the plaintiff relief the court stated that it was incumbent upon the landowner to know what school district his lands are a part of and that the payment of school taxes without protest and in the belief that the land constituted part of a school district comprising a city of the second class is a voluntary payment, and, after the taxes have been paid over to the board of education and have been disbursed for school purposes, it is too late for the landowner to maintain an action to recover them. In *San Diego Land & Town Co. v. La Presa School Dist., supra,* it was held that "where

property was assessed in a district in which it was not situate, and the owner, having the means of discovering the mistake, voluntarily paid the tax, he could not recover it back.''

In 94 A. L. R. following the report of the case of *Edwards v. Oklahoma County, supra,* there is an annotation upon the question of the right to recover back taxes paid upon property assessed in the wrong district and at the top of page 1225 the author of the annotation says that in several instances the amount of taxes paid on property assessed in the wrong tax district has been recovered, citing the cases of *Bridgeport Hydraulic Co. v. Bridgeport,* 103 Conn. 249, 130 Atl. 164, *Churchill v. Highland Park Graded School,* 28 Ky. L. Rep. 162, 89 S. W. 122, and *Fremont, E. & M. U. R. Co. v. Holt County,* 28 Neb. 742, 45 N. W. 163. ''In the majority of cases,'' continues the annotator, ''the recovery back of taxes paid by mistake upon property assessed in the wrong county, town or school district has been denied'' and among others the case of *Walser v. Board of Education,* 160 Ill. 272, is cited. In that case the court said that a taxpayer who pays the amount of a school tax erroneously assessed upon his land by reason of the public officers mistaking the school district in which it belongs, does so voluntarily even though he is ignorant of the mistake and cannot recover such payment even though the amount is substantially greater than the amount of school taxes to which the land would have been subjected had such mistake not been made, and held that an illegal and void tax voluntarily paid cannot be recovered by the person paying the same from the municipality which receives such illegal and void tax.

Counsel for appellant insist that the *Walser* case is not in point as the individual complainant tax payers had a duty to pay taxes to one of the school districts, while in the instant case there was no such duty as the

land of plaintiffs was not assessable for high school taxes. However, in the *Walser* case the county clerk by mistake entered certain described real estate which was in fact situated in District No. 2 as being located in District No. 1 and the land was so taxed and the owners of the land did not know of the mistake of the county clerk and paid their taxes. In its opinion the court said: "The tax levied by District No. 1, as extended on lands belonging to District No. 2, was an illegal and void tax. . . . The books were open to inspection by the taxpayers and the means of knowledge existed to learn and know all the facts. Money paid voluntarily by one with knowledge or means of knowledge of all the facts cannot be recovered back (citing cases). To recover from a municipality taxes illegally collected and paid out, the tax must have been illegal and void, paid under compulsion, or, what would be equivalent thereto, received to the use of the municipality from the collecting officer."

The appellee school district has nothing to do with the extension of taxes in this State; all it does is to certify to the county clerk the amount of money which will be necessary for its purposes during the year. The county clerk then extends a rate upon the assessed value of the property in the district sufficient to produce the amount levied. The records of the county clerk and collector, showing the tax rate and the property against which it was extended, are matters of public record as are also the boundaries of the appellee district. Appellants had the means of ascertaining the facts and herein is the distinction between the instant case and *Pederson v. Stanley County, supra.* There the taxpayer would not have been able, under any circumstances, to determine in which county his property was located and taxable, so also in *United States v. Norton,* which we think is clearly distinguishable from the instant case.

In *Yates v. Royal Ins. Co.*, 200 Ill. 202, which was an action by the insurance company against the State superintendent of insurance to recover taxes paid by it under an act of the legislature thereafter held void, the court held there could be no recovery and quoted the following from Cooley on Taxation: "That a tax voluntarily paid can not be recovered back, the authorities are generally agreed. And it is immaterial, in such a case, that the tax has been illegally laid, or even that the law under which it was laid was unconstitutional. The principle is an ancient one in the common law, and is of general application. Every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as the reason why the State should furnish him with legal remedies to recover it back." And in *Swanston v. Ijams,* 63 Ill. 165, which was an action brought against the county treasurer of McLean county to recover back taxes illegally assessed, the court held that there were two reasons why the plaintiff could not recover: first, he did not assert his rights when he might have done so, and second, he voluntarily paid the tax even though he did so in order to prevent a sale of his lands.

In our opinion, under the foregoing authorities, there can be no recovery under the allegations of the complaint and the judgment of the trial court will therefore be affirmed.

*Judgment affirmed.*